UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| BRENT MILLER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 1:16-cv-00122-SLC |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Nancy A. Berryhill*,[1] *Acting Commissioner of Social Security,* | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Brent Miller appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[2] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. FACTUAL AND PROCEDURAL HISTORY

Miller applied for DIB in February 2013, alleging disability as of December 28, 2012. (DE 9 Administrative Record ("AR") 152-153). The Commissioner denied Miller's application initially and upon reconsideration. (AR 96-99, 101-07). After a timely request, a hearing was held on May 22, 2014, before Administrative Law Judge William D. Pierson (the "ALJ"), at which Miller, who was represented by George Merkle, a non-attorney representative; and a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 12); *see* 28 U.S.C. § 636(c).

vocational expert, Marie Kieffer (the "VE"), testified. (AR 36-74). On August 4, 2014, the ALJ rendered an unfavorable decision to Miller, concluding that he was not disabled because he could perform a significant number of unskilled, sedentary jobs in the economy despite the limitations caused by his impairments. (AR 22-30). Miller requested review of the decision by the Appeals Council and submitted additional evidence with his request, but the Appeals Council denied review (AR 1-6, 15), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Miller filed a complaint with this Court on April 11, 2016, seeking relief from the Commissioner's decision. (DE 1). Miller advances five arguments in this appeal: (1) that the ALJ erred at step three by failing to obtain an updated medical opinion as to whether he met or equaled a listing; (2) that the residual functional capacity ("RFC") assigned by the ALJ is not supported by substantial evidence; (3) that the ALJ improperly discounted the credibility of Miller's symptom testimony; (4) that the VE's testimony was unreliable; and (5) that the Appeals Council erred by failing to remand the case to the ALJ due to new and material evidence. (DE 15 at 13-24).

At the time of the ALJ's decision, Miller was 46 years old (AR 30, 152) and had a high school degree, had attended four or more years of college, and had obtained an associate's degree in applied sciences, a certification in welding and sheet metal, and a journeyman's license (AR 184). Miller had worked as a metal fabricator in the tool and die business from October 1985 to December 2012. (AR 175, 184). In his DIB application, Miller alleged disability due to osteoarthritis; lumbosacral degenerative disc disease and fusion, bilateral hip replacements, a Factor V Leiden clotting disorder, hypertension, and hypercholesterolemia. (AR 183).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12

3

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On August 4, 2014, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 22-30). At step one, the ALJ concluded that Miller had not

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

engaged in substantial gainful activity after his alleged onset date. (AR 24). At step two, the ALJ found that Miller had the following severe impairments: moderate lumbar degenerative disc disease and residuals of lumbar surgery, residuals of remote bilateral hip replacements, and Factor V Leiden mutation. (AR 24). At step three, the ALJ concluded that Miller did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 25).

Before proceeding to step four, the ALJ determined that Miller's symptom testimony was "not entirely credible" and then assigned Miller the following RFC:

> [T]he claimant is able to lift and carry 10 pounds occasionally, stand and/or walk 4 of 8 hours; sit 4 of 8 hours; no crawling; occasional kneeling, crouching, balance and squatting; no deficits in reaching or fine and gross manipulation; no climbing of ropes, ladders or scaffolds; occasional use of stairs and ramps 1 to 2 flights with rails; occasional bending and stooping in addition to what is required to sit; no work involving concentrated exposure to heat, cold, wetness, fumes and dusts; no work involving concentrated exposure to hazards of unprotected heights and open and dangerous machinery.

(AR 25-26). The ALJ found at step four that Miller was unable to perform his past relevant work as a metal fabricator. (AR 28-29). At step five, based on the assigned RFC and the VE's testimony, the ALJ concluded that Miller could perform a significant number of unskilled, sedentary jobs in the economy, including document preparer, addresser, and surveillance system monitor. (AR 30). Therefore, Miller's application for DIB was denied. (AR 30).

## C. The Assigned RFC

Miller argues, among other things, that the RFC assigned by the ALJ is not supported by substantial evidence. More particularly, Miller faults the ALJ for failing to incorporate his periodic use of a cane for ambulation and his limitations in prolonged walking or standing. For the following reasons, Miller's arguments are persuasive.

5

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-p, 1996 WL 374284 ,at *1; *see* 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."); *see also Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted). The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545. Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Here, Miller testified that he uses a cane "periodically," which he stated was about once or twice a week. (AR 56). He stated that he can tell in the morning if he is going to have a "bad day" and then he uses the cane when he goes out or when climbing or descending stairs. (AR 56). The ALJ, however, did not include any limitation in the assigned RFC for Miller's periodic use of a cane. In the context of the listings at step three, the ALJ explained: "Although he may use a cane for ambulation, the medical evidence does not establish the need for a hand-held assistive device to aid in walking, or standing, and describing the circumstances for which it is

needed as required under SSR 96-9p."[4] (AR 25 (internal citation omitted)). Then, when considering the RFC later in the decision, the ALJ acknowledges Miller's testimony that "he uses a cane periodically, once or twice a week," but the ALJ did not incorporate any use of the cane into the RFC. (AR 26).

On March 14, 2014, Dr. Karl, Miller's treating orthopaedist, observed that Miller's spinal X-ray showed moderate degenerative disc disease at L1-L2. (AR 334). Dr. Karl's clinical impression was lumbar radiculitis, lumbar degenerative disc disease, low back pain, right degenerative osteoarthritis in hip, and lumbar sacroilitis. (AR 334). In the "Plan" section of his treatment note, Dr. Karl wrote: "Patient to use a cane for ambulation." (AR 334). In light of Dr. Karl's treatment note, Miller argues that the ALJ erred by concluding that the medical evidence does not establish the need for a cane. *See, e.g., Grube v. Colvin*, No. 1:14-cv-01294-DKL-RLY, 2015 WL 5672645, at *6 (S.D. Ind. Sept. 24, 2015) (remanding case where the ALJ concluded that a cane was not medically necessary even though it was prescribed by a physician and explaining that while the claimant "might not need the cane on good days, she may need it on bad days").

The Commissioner, in response, points out that on the same day that Dr. Karl included Miller's need for a cane in his treatment note, Dr. Karl also penned a work note, which did not

---

[4] SSR 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is need (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996).

7

mention the use of a cane. This work note provided: "The patient should not lift/carry 11-25 lbs, lift/carry 26-40 lbs, twist/bend, squat/kneel, climb or work with vibratory tools. The patient may occasionally lift/carry 1-10 lbs, walk, work above shoulder, push/pull objects, and perform repetitive motion." (AR 335). The Commissioner further argues that while Miller told Dr. Bacchus he used a cane periodically at his March 2013 consulting examination, Miller was not using a cane on that day. (AR 27, 283). Nor was Miller using a cane when he visited the hospital for an unrelated illness in December 2012. (AR 262). Therefore, as the Commissioner sees it, the ALJ reasonably omitted a need to use a cane from Miller's assigned RFC.

Dr. Karl's opinions concerning Miller's use of a cane and his work restrictions, however, require further explanation. "An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (collecting cases). "[A]n ALJ should recontact a treating physician if the basis for the medical opinions requires explanation or if the ALJ is unable to apprehend the underlying basis of the testimony." *Derr v. Colvin*, No. 11 C 50247, 2014 WL 654391, at *12 (N.D. Ill. Feb. 20, 2014) (citation omitted). Therefore, the ALJ should have contacted Dr. Karl to clarify Miller's need for a cane while ambulating.

Moreover, while the ALJ concluded that the assigned RFC "is supported by the opinions of State agency physicians, Dr. Bacchus, and Dr. Karl" (AR 28), that is not entirely accurate. Not only did Dr. Karl opine that Miller use a cane for ambulation, but Dr. Karl also opined that Miller could just "occasionally . . . walk" in an eight-hour workday. (AR 335). The Social Security regulations define "occasional" as occurring no more than one-third of an eight-hour workday, *see Mullin v. Colvin*, No. 15 C 1258, 2016 WL 2865366, at *3 (N.D. Ill. May 17,

8

2016) (citing SSR 83-10, 1983 WL 31251, at *5-6 (1983)), and this same definition is also reflected in Dr. Karl's notes (AR 332 ("up to 1/3 day")). This would translate to Miller walking no more than two and three-quarters hours in an eight-hour workday. The ALJ, however, limited Miller to standing or walking for *four* hours in an eight-hour workday, which is more than occasional.

Additionally, Dr. Karl opined in March 2014 that Miller could never twist, bend, squat, kneel, or climb. (AR 335). Yet, the ALJ concluded that Miller could occasionally kneel, crouch, balance, squat, bend, stoop, and climb stairs or ramps. (*Compare* AR 335, *with* AR 26). The ALJ never confronted this conflict in the evidence and explained why he adopted limitations in the RFC that contradict the postural limitations assigned by Miller's treating orthopaedist, Dr. Karl. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

Nor do the opinions of the state agency physicians, Drs. J.V. Corcoran and J. Sands, support the assigned RFC with respect to Miller's ability to perform prolonged walking or standing. They found that Miller could stand or walk just *two* hours in an eight-hour workday (AR 79, 89), not four hours in an eight-hour workday as the ALJ concluded. Furthermore, the state agency doctors rendered their opinions in April and May 2013 *before* Dr. Karl issued his May 2014 opinions. (AR 81, 90). Thus, the state agency doctors never reviewed Dr. Karl's opinions concerning the use of a cane and the prolonged walking and postural restrictions. Dr. Karl's opinions reasonably could have impacted the state agency doctors' opinions. *See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) ("Before basing a denial on such a finding, the ALJ

9

should have considered contrary evidence and obtained a medical opinion based on a complete record." (citation omitted)).

As to Dr. Bacchus, in his March 2013 report, he acknowledged Miller's periodic use of a cane and found that Miller had "some limitations" in regard to prolonged standing and walking and postural movements. (AR 282, 284). Dr. Bacchus, however, did not elaborate as to Miller's specific limitations in these abilities. (AR 284). Due to this vagueness, Dr. Bacchus's opinion does not independently support the assigned RFC for prolonged walking and standing in excess of the limitations opined by Dr. Karl and the state agency physicians.

In sum, the ALJ failed to confront and resolve the conflicting evidence in Dr. Karl's opinion about Miller's use of a cane. Additionally, the RFC assigned by the ALJ lacks the support of substantial evidence with respect to the limitations on prolonged walking and standing. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities, but the primary piece of evidence that she relied on does not support the propositions for which it is cited. We therefore must conclude that the ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion." (citations omitted)). Therefore, the Commissioner's final decision will be remanded for further consideration of Dr. Karl's opinion, Miller's use of a cane, and the RFC concerning prolonged walking and standing and postural movements.[5]

### IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case

---

[5] Because a remand is warranted concerning Miller's use of a cane and the RFC, the Court need not reach Miller's other arguments.

is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Miller and against the Commissioner.

SO ORDERED.

Entered this 22nd day of May 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge